# EXHIBIT C

**THE CENTER FOR JUSTICE & ACCOUNTABILITY**
Bringing Human Rights Abusers To Justice.

**doughty street chambers**

CENTER FOR JUSTICE AND
ACCOUNTABILITY
One Hallidie Plaza, Suite 406
San Francisco, CA, USA 94102
+1 415 529 7759
dmclaughlin@cja.org

AMAL CLOONEY
Barrister and Attorney
53-54 Doughty Street
London WC1N 2LS
+44 020 7474 1313
personalasst@icloud.com

February 12, 2019

*Via email*

Dennis M. Fitzpatrick
Office of the United States Attorney
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, VA 22314

> **Re:** Representation of additional Yazidi victims under the Crime Victims' Rights
> Act in *US v. Nisreen Assad Ibrahim Bahar (a.k.a. Umm Sayyaf)* and
> enforcement of our clients' rights under the CVRA

Dear Mr. Fitzpatrick:

We refer to our letters of February 7, 2017 where we explained that two Yazidi survivors, Jane Doe[1] and Mary Roe, had retained us to represent their interests under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, in the matter of *U.S. v. Bahar*, No. 1:16-mj-00063-MSN (E.D. Va.), and that the Center for Justice and Accountability (CJA) also acts as legal counsel for the parents of Kayla Jean Mueller in the above matter. Jane Doe, Mary Roe and Kayla Jean Mueller are named as victims of Umm Sayyaf's federal offences in the Affidavit in Support of Criminal Complaint and Arrest Warrant ("Affidavit") filed in this matter.

We also refer to our meeting on March 1, 2017 and our further letter of May 11, 2018, where we urged you to re-examine the possibility of seeking the extradition or transfer of Umm Sayyaf and provided salient precedents for the extradition of Iraqi nationals from Iraq. As explained in that correspondence, we believe the case opened by your office presents the only vehicle to hold Umm Sayyaf accountable for the crimes she committed against our clients. Her extradition or transfer is, therefore, necessary to enforce our clients' right to "proceedings free from unreasonable delay." *See* 18 U.S.C. § 3771(a)(7). We regret that despite multiple requests, your office remains unavailable to discuss this matter or any other issues related to the above captioned proceedings, notwithstanding our clients' CVRA right to reasonably confer with your office. *See* 18 U.S.C. § 3771(a)(5).

In addition, we now write to inform you that we have been retained by three additional clients who wish to assert their interests under the CVRA in this case – Mary Roe II, Mary Roe III, and Mary Roe

---

[1] Please note that Jane Doe, who had initially retained us to represent her interest under the CVRA, no longer wishes to be involved in this matter for the time being.

IV. These women are also victims of one or more federal offenses committed by Umm Sayyaf. Mary Roe II and Mary Roe III are young Yazidi women who were enslaved by Abu and Umm Sayyaf in 2014. Mary Roe IV is the mother of Mary Roe V, a young Yazidi woman who was enslaved and sexually abused in the Sayyaf residences between 2014 and 2015, and who has not returned from captivity.

*Mary Roe II* and *Mary Roe III.* Iraqi nationals and members of the Yazidi faith, Mary Roe II and Mary Roe III are cousins and were both abducted by ISIL militants on August 15, 2014 during an attack on their village in the Sinjar region of Iraq. Mary Roe II was 15 years old at the time, while Mary Roe III was 13 years old. They were transferred to a series of detention centers in Iraq for Yazidi women enslaved as *sabaya*. Eventually, in or around November 2014, Mary Roe II and Mary Roe III were transferred to the custody of Abu and Umm Sayyaf, together with Mary Roe II's younger sister and Mary Roe III's older sister.[2] Mary Roe II, Mary Roe III, and their sisters were held in one of the Sayyaf residences in Syria. Mary Roe V was already detained at that location when they arrived.

Mary Roe II and Mary Roe III were forcibly confined by Abu and Umm Sayyaf and held as slaves. They were usually locked up in a room and were forced to perform domestic labor. Mary Roe II and Mary Roe III were subject to emotional abuse and physical neglect at the hands of, or instigated by, Umm Sayyaf. They were not given sufficient food and had to witness fellow Yazidi captives being beaten by Abu Sayyaf at the instigation of Umm Sayyaf, who would insult and abuse Mary Roe II, Mary Roe III and the other Yazidis detained at her residence.

After about a month in the custody of Abu and Umm Sayyaf, Mary Roe II, Mary Roe III and their sisters were sold to another ISIL man, known as Abu Sayyaf Al-Maghrebi. Mary Roe V remained in the custody of Abu and Umm Sayyaf at this time. Mary Roe II and Mary Roe III were thus the victims of slave trading, in which Umm Sayyaf was a willing participant. Umm Sayyaf was also directly involved in other crimes committed against Mary Roe II and Mary Roe III during their time in captivity, the details of which will be provided at a later date.

*Mary Roe IV.* An Iraqi national and member of the Yazidi faith, Mary Roe IV was 38 years old when ISIL militants abducted her and some of her children during an attack in the Sinjar region of Iraq on August 4, 2014. Mary Roe IV had five children, the oldest being Mary Roe V, who was 15 years old at the time. After being held captive with her mother Mary Roe IV for some weeks, Mary Roe V was ultimately separated from her and taken to Syria by ISIL militants. Mary Roe IV has not seen or spoken to her daughter Mary Roe V since August or September 2014. However, Mary Roe IV and her family received information that, as of the summer of 2018, Mary Roe V was alive and held captive by ISIL militants in one of the few enclaves in Syria over which they retain control.

There are clear and consistent indications that Mary Roe IV's daughter Mary Roe V is the same person who was held alongside Mary Roe II and Mary Roe III at one of the Sayyaf residences in Syria and who was ultimately handed over by Abu and Umm Sayyaf to another ISIL member known as Haji Hamad in May 2015, in exchange for Mary Roe.

---

[2] Mary Roe II's younger sister died in a car accident months after Abu and Umm Sayyaf sold Mary Roe II and her relatives to another ISIL fighter. Mary Roe III's older sister has not returned from captivity.

Mary Roe V, an Iraqi national and member of the Yazidi faith, was 15 when ISIL abducted her during the attack on Sinjar on August 4, 2014. Mary Roe V was held by Abu and Umm Sayyaf at various residences from August or September 2014 until May 2015. With Umm Sayyaf's knowing and willful assistance, Mary Roe V was subjected to sexual and physical violence by Abu Sayyaf. Mary Roe V was also forced to perform domestic labor and subjected to degrading treatment. Umm Sayyaf also beat Mary Roe V and instigated Abu Sayyaf to beat her, and was directly involved in other crimes committed against Mary Roe V during her time in captivity, the details of which will be provided at a later date.

From these and other facts to be proven at trial it is apparent that Mary Roe II and Mary Roe III are "crime victims" within the meaning of the Crime Victims' Rights Act, 18 U.S.C. § 3771(e)(2)(A). Both were directly and proximately harmed by one or more federal offenses committed by the defendant, Umm Sayyaf. Their injuries were inflicted in the course of the charged conspiracy to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B. Since Mary Roe III is a minor whose parents have disappeared, she is represented by her uncle and surviving next-of-kin, John Doe, who is entitled to "assume the crime victim's rights" on her behalf under section 3771(e)(2)(B).

Mary Roe V is also clearly a "crime victim", but since she has not returned from captivity, and may be deceased, her mother Mary Roe IV assumes Mary Roe V's rights under section 3771(e)(2)(B). Mary Roe IV is also a crime victim in her own right within the meaning of the Crime Victims' Rights Act, 18 U.S.C. § 3771(e)(2)(A) since she was emotionally injured by the crimes inflicted against her daughter Mary Roe V at the hands of Umm Sayyaf. Not only are Mary Roe II, Mary Roe III and Mary Roe IV victims in this case, they are also crucial witnesses against Umm Sayyaf and hold information on the situation of US citizen Kayla Jean Mueller following her abduction by ISIL militants. Mary Roe II, Mary Roe III, and Mary Roe IV are not referenced in the Affidavit in Support of Criminal Complaint and Arrest Warrant in *US v. Bahar* and we have reason to believe that they have not yet been interviewed by the US authorities.

In our letters of February 7, 2017 and at our meeting on March 1, 2017, we explained that our clients wish to see Umm Sayyaf tried for her role in the abuses they endured while kept in captivity at the Sayyaf residences in Syria. This is also the wish of Mary Roe II, Mary Roe III and Mary Roe IV. As we explained in our meeting on March 1, 2017 and our letter dated May 11, 2018, we believe that the limited proceedings against Umm Sayyaf in Iraq did not address these abuses. In our meeting on March 1, 2017, you represented that the U.S. government had not yet sought information from the Iraqi or Kurdish authorities concerning details of the criminal charges or evidence brought against Umm Sayyaf in these proceedings. Please confirm whether this remains the case and, if possible, provide us with an update concerning any information you have received.

We respectfully acknowledge that the decision about which charges to file against Umm Sayyaf is squarely within your discretion. As discussed at our March 1, 2017 meeting, our clients nevertheless wish to confer with you, in accordance with 18 U.S.C. section 3771(a)(5), to provide your office with further information and any assistance we can offer concerning the totality of crimes committed by the defendant. We could, for example, provide information concerning Umm Sayyaf's role in the genocide perpetrated against the Yazidis in violation of 18 U.S.C. sections 1091A and 2339A. Indeed, the U.S. Department of State designated the Islamic State's attacks against the Yazidis a genocide under the

Genocide Convention.[3]  In addition, we could provide additional information concerning Kayla Mueller's treatment in captivity sufficient to give rise to charges under the Torture Act. *See* 18 U.S.C. § 2340.  Moreover, we believe we can provide additional detail sufficient to show that Umm Sayyaf knowingly trafficked and enslaved our clients in violation of 18 U.S.C. sections 1584 and 1590 and knowingly engaged in child sex trafficking under 18 U.S.C. section 1591. Adding these charges would allow our clients to see Umm Sayyaf charged for the full extent of her role in their captivity and, in the event Umm Sayyaf is tried and convicted, to seek *full* and timely restitution as required by the CVRA, the Mandatory Victim Restitution Act, and 18 U.S.C. section 1593. *See* 18 U.S.C. §§ 3663A, 1593(a), 3771(a)(6). We respectfully would welcome the opportunity to confer with you and provide you with information and any additional resources you may require to establish the factual and legal predicates concerning these and other potential charges, in accordance with the rights granted to our clients under the CVRA. *See* 18 U.S.C. § 3771(a)(5).

Moreover, further to our meeting on March 1, 2017 and our additional letter of May 11, 2018, we urge your office to work with the relevant U.S. authorities to re-examine the possibility of seeking the extradition or transfer of Umm Sayyaf to the U.S. We believe doing so is necessary to secure our clients' rights to a proceeding without unreasonable delay under the CVRA. *See* 18 U.S.C. § 3771(a)(7). We understand that despite our submissions, which provided precedent for Umm Sayyaf's extradition or transfer to the United States, as yet, the U.S. government has made no such requests. Please confirm this and how your office, or any other relevant U.S. government department or agency, intends to proceed on this matter and what circumstances, if any, would effectuate a change in your position.

In light of our prior correspondence and the continued unavailability of your office to confer on this matter, we intend to file a motion in March 2019 to enforce our clients' rights (i) to confer with your office, and (ii) to proceedings free from unreasonable delay, as provided under the CVRA, so as to ensure that, if Umm Sayyaf is tried and convicted, our clients receive full and timely restitution as provided by law. *See* 18 U.S.C. § 3771(a)(5), (6), (7). In accordance with Local Criminal Rule 47(E), we would welcome the opportunity to meet and confer with you either in person or by telephone in advance of our submission.

Sincerely yours,

Daniel McLaughlin
*for* Center for Justice and Accountability

Counsel for Mary Roe, Mary Roe II,
Mary Roe III, Mary Roe IV for the
purposes of the CVRA motion, and for
Carl and Marsha Mueller

Amal Clooney
Doughty Street Chambers

Counsel for Mary Roe, Mary Roe II,
Mary Roe III, and Mary Roe IV.

---

[3] U.S. Sec'y of State John Kerry, "Remarks on Daesh and Genocide," Mar. 17, 2016, https://www.state.gov/secretary/remarks/2016/03/254782.htm; *see also* U.S. Dept of State, "Atrocities Prevention Report: Targeting of and Attacks on Members of Religious Groups in the Middle East and Burma," https://www.state.gov/j/drl/rls/254807.htm.